First case is Gregg v. Rauner, 5-16-0474, Salem County. And we have Mr. Legner for the appellant and Tom Crosby for the appellee. Are you gentlemen prepared and ready to go? Yes, I am. Okay. Good morning, your honors. May it please the court. Counsel. Brett Legner on behalf of the governor. Your honors, this court should reverse the circuit court's judgment. The primary issue in this case is whether the governor's exercise of his constitutional removal power is subject to judicial scrutiny. Article 5, Section 10 of the Illinois Constitution provides that the governor may remove for incompetence, neglect of duty, or malfeasance in office any officer who may be appointed by the governor. In 1878, the Illinois Supreme Court in Wilcox set forth the rule in Illinois that the governor's decision to exercise his discretion and remove an appointee from office is not subject to judicial review. Subsequently, in London, the Illinois Supreme Court recognized a narrow exception to this broad Wilcox rule. First, London acknowledged Wilcox and did not own the rule. So to be clear, Wilcox is still a law going on. Second, London acknowledged that the framers of the 1970 Constitution knew about the Wilcox rule. Indeed, the framers explicitly discussed the Wilcox rule during the debates, but left the rule division intact with no substantive changes, language changes that stated were not in any way substantive. So the framers of the Constitution understood that Wilcox was the law of the land and decided not to change the language of the rule's provisions. Next, London ultimately found an exception to the general Wilcox rule in that case, which regarded removal of a member of the Illinois State Board of Elections. But in the way the court reached, the London court reached the determination that that decision, the gubernatorial decision, was judicially reviewable is essential to this court's decision in this case. The court in London explained that its decision was based on the particular facts of the case and the unique circumstances of the State Board of Elections. Again, the court acknowledged the general Wilcox rule that gubernatorial removal decisions are not judicially reviewable. The governor's exercise of that discretion given by the Constitution is protected from scrutiny by the separation of powers principles that the Illinois Supreme Court discussed in Wilcox in 1878. So the court, though, recognized that the State Board of Elections is a specific or a unique creature because the State Board of Elections is constitutionally independent. The Illinois Constitution requires the State Board of Elections. The Illinois Constitution requires that the State Board of Elections be nonpartisan, that it cannot have a majority of any political party. Counsel, isn't, though, with the Prison Review Board, isn't it nonpartisan? I mean, aren't there restrictions on the number from each party or no party can have a majority on the board? No, Your Honor. Thank you. The statute, the Prison Review Board statute, says that no more than eight of the 15 members may be from one political party. So in other words, there can be a majority. And that is an important distinction, and I'll touch on that again in a moment. In addition to this nonpartisanship and constitutional mandate of the State Board of Elections, the framers, and this is essential, the framers during the debates explained that the State Board of Elections must be politically independent. It must be politically independent because the integrity of the political process requires that. The framers stated that the State Board of Elections is going to be making decisions that go to the heart of elections, how elections are conducted, who's going to be on a ballot, uphold ballot decisions, those kind of things. And that cannot be seen to be, their mission cannot be seen to be subject to outside political pressures. Otherwise, the entire integrity of the process would be undermined. The London Court took great care to lay out these facts to distinguish that case from the general court situation. Comparing the State Board of Elections to the Prison Review Board showed that the members, appointees to the Prison Review Board are within the Wilcox rule and not within the narrow Lundin exception. First, Lundin did not rest simply on the fact that the State Board of Elections was characterized as a quasi-judicial body. While the State Board of Elections may perform some quasi-judicial functions, the court went to great lengths to explain the importance of political independence to the very mission of the State Board of Elections, as well as the constitutional mandate of the State Board of Elections, or for the State Board of Elections, as well as explain that it has to be non-partisan. If simply characterizing an agency as quasi-judicial were in effect, that would quickly swallow the Wilcox rule. Virtually every executive agency or board performs some type of quasi-judicial function. Now, Illinois courts are clear in the cases that we cite in our brief, Illinois courts are clear that an agency may exercise some quasi-judicial functions, but do other things that are not quasi-judicial that are executive in nature in terms of implementing policy. So the mere fact that an agency may at times implement a quasi-judicial decision certainly cannot mean that it therefore qualifies as a quasi-judicial agency and therefore falls outside of Wilcox. Again, that would swallow the Wilcox rule, and that was not enough for the court in Lundin. Lundin looked beyond that characterization in explaining its decision. And this is consistent with the U.S. Supreme Court precedent that the Lundin court discussed in its decision. For instance, the Humphreys executive case, the U.S. Supreme Court's decision on Humphreys executive, concerned whether the president's removal of a member of the Federal Trade Commission was reviewable. And the court said it was because Congress, when it created the Federal Trade Commission, according to the Supreme Court of Humphreys executive, the Federal Trade Commission members performed no executive functions. They performed no executive functions, the Supreme Court held in Humphreys executive. It wasn't that it was a quasi-judicial or a quasi or not agency. And in fact, in fact, the court explained that the Federal Trade Commission performed some quasi-legislative acts in addition to its quasi-judicial functions. So, again, this characterizes something as having some quasi-judicial aspects is not enough. Instead, the Humphreys executive court made sure to point out that members of the Federal Trade Commission performed no executive functions. Additionally, in the Supreme Court leaner decision that the Lundin court was on, discussed a dichotomy, a dichotomy between authors who fall within the traditional executive apparatus and those that require absolute independence. And that's the court's language, they require absolute independence. And the reasoning behind this dichotomy makes sense. The governor is given a constitutional appointment of power to fill positions that are not otherwise provided, appointments to which are not otherwise provided for by the Constitution or a statute by the General Assembly. In doing so, the governor, as a chief executive, is filling the position of those agencies that execute executive policy, that carry out executive policy. It is all part of the executive structure. And that's what the Supreme Court recognized in Wilcox, would be an intrusion upon the separation of powers in the governor's control as a chief executive or the executive apparatus to engage in judicial scrutiny. Counsel? Yes. These positions have specific terms. They do. Are there any cases which discuss what, if any, effect the fact that these positions have terms as on this issue? The cases do not explicitly, as far as I'm aware, Your Honor, the cases do not explicitly address the fact or the point of a limited term. I will say that in many of these cases, either the federal cases or the cases that you deal in white cases, the appointment is for a specific term. And it just seems that, as a general matter, that virtually all – in fact, virtually all appointments are for specific terms. And so that has not been a salient effect. Again, because I think virtually all appointments are for specific terms. So ultimately, the court must look beyond whether an agency is simply exercising some quasi-judicial power at times and must decide whether the officers require total freedom from executive control to perform their duties. To determine whether – to determine whether allowing some measure of underviewable executive control so undermines the mission of that agency to render its processes ineffective or to destroy the integrity of its processes. And that test is not met here. Whereas the State Board of Elections in London was constitutionally mandated, there was no review for it. It was met here statutorily. Whereas the State Board of Elections in London, as we discussed a little bit ago, was nonpartisan. So no political party can have a majority. And in fact, the State Board of Elections is an eight-member board with four members from the Democratic Party and four members from the Republican Party, as it's laid out in some kind of history. And so it shows the nonpartisan nature. Eight of the 15 members, so a majority, a simple majority, but a majority of the members of the Prison Review Board may be from one political party, can be from one political party. Additionally, whereas the State Board of Elections requires independence as key to the democratic process and as the language of London and from the language of the constitutional prevention debates, the Prison Review Board does not require executive independence. Instead, the Prison Review Board is in part required to advise the governor. And that is with specific regard to the importance of exercising the governor's constitutional clemency power. So the Illinois Constitution gives the governor virtually unfettered discretion in granting executive clemency. But the Prison Review Board acts as an advisor to the governor on clemency matters. It stands to reason that appointees who are acting as advisors to the executive are within the—speaking of the Wiener dichotomy—within the traditional executive apparatus, as opposed to requiring complete independence from the chief executive. Furthermore, the State Board of Elections does not execute policy—executive policy decisions. But the Prison Review Board does. The Prison Review Board, for instance, exercises what it has called—what its regulations call and what the Illinois courts have recognized to be executive discretion in granting parole. Right? When the Prison Review Board engages in parole hearings, its decisions are not judicially reviewable. That's the Supreme Court's decision in Hammond County. And whether it grants parole is a matter of what the statute or what the administrative regulations explicitly say. And Illinois courts have quoted those regulations. It grants parole as a matter of a grace and executive decision. It is implementing executive policy in doing that. That does not require the same sort of independence from executive factors that the State Board of Elections does. Moreover, the Prison Review Board is assigned certain functions regarding prison discipline. When the Department of Corrections makes certain disciplinary decisions, some of those—for instance, if a certain amount of good time and conduct is to be provoked for inmates— some of those decisions are, again, subject to further review by the Prison Review Board. Matters of prison discipline—and all the disciplinary rules are set forth in the administrative regulations—matters of prison discipline go to the operation of prisons. And that is an intensely executive function. Determinations of theory on how prisons should be operated, how discipline should be carried out in prison is very much an executive function. For those reasons, your Honor, for those reasons, your Honor, membership—an appointee to the Prison Review Board falls under the general rule of conduct and does not fall within a narrow exception to rule of conduct that the Supreme Court recognized in London. Returning to my next point, which is, if, however, this Court does determine that the removal decision is judicially reviewable, the Governor's decision to exercise his discretion and exercise the constitutional removal power is entitled to deference on review from this Court. To be clear, in London, the Court did not reach the issue of whether the removal power—so the Court found that the removal of a member of the State Board of Elections was judicially reviewable. The Court did not reach the issue in that case of whether there was sufficient cause for removal. So we don't have a direct holding from the Illinois Supreme Court or an Illinois Court saying that when the Governor exercises the removal power in a way that is judicially reviewable, this is the level of deference that that decision should get. But Illinois law plainly leads to the conclusion that the Governor's decision is entitled to deference from a Court if it so decides to review it. And that is because the Constitution gives the Governor the power to make the decision whether to remove an appointee. The Constitution places that determination first in the Governor. The Court then acts as a body to review that decision. In reviewing that decision, the Court is reviewing the exercise of a discretionary act by a Government official. The Governor's discretionary act to remove an appointee. The Bigelow case that we studied makes clear that when a Court engages in review of a discretionary act of a public official, review is limited. Deference is accorded to the exercise of that discretion. In fact, in the context of the exercise of the removal power, the Illinois Supreme Court in the Stevenson case in 1853, so 25 years before, 35 years, 25 years, my path is terrible, 25 years before Landing, explained that when an officer exercises the removal authority, he is presumed to exercise it in good faith. And the exercise of the removal power will presume not to be exercised as a matter of caprice. This is very longstanding Illinois law that officials in whom this discretionary power rests are entitled to presumption that they exercise it in good faith. And so if this Court does determine that this decision, in this case, is discretionary and reviewable, all of this law, I think, irreducibly leads to the conclusion that the Governor's decision is entitled to deference. And then, turning for a minute to that decision, the Governor's decision, viewed in this deferential lens, should be, if this Court reviews it, upheld. And specifically, so the Governor cited two reasons for removal. First, failure to file a proper statement of economic interest. And second, signing a sworn filing in a bankruptcy case that wasn't accurate. Turning to the statement of economic interest, the failure to file a statement of economic interest is important. Certainly, the plaintiff suggests that this was a mistake and argues that nobody told me that I didn't file the right one or that I didn't file the right one. But the evidence is clear. And during the proceedings in the trial court, the plaintiff admitted that he filed a statement of economic interest before. He knew he had to file a statement of economic interest. And he had done so in advance. The fact that he did not file a statement of economic interest before the year for which he was required to file one, the 2012 statement of economic interest, the Governor could view that failure to comply with the state's ethics law as a reason to suggest that this person is not fit, that this person, the failure to follow, the failure of a state appointee to follow ethics requirements is cause for removal. Counsel, notice that you didn't give it to the governor. Excuse me, Your Honor? For state officials. Notice that you didn't give it to the state officials to file the case. And there was a gap, was there not, between the appointment and the hearing? Yes, Your Honor. So there was, and I think the gap is a little more perpetual than that. There was an initial decision that a plaintiff was going to be appointed. And at that point, it was put on hold. And then a year later, he was nominated in April or in the spring of the year. And then the hearing, the Senate, the confirmation hearing was then in the fall of September. That's all true. And so when the statement that was filed, it was one that was completed at the time of the initial appointment that ultimately got delayed. That's all true. But the law still requires these officials to submit a timely statement of economic interest. And again, plaintiffs have filed statements of economic interest in the past as a result of his other public positions. The point, though, is, you know, in a deferential lens, the governor could see this is an inattention to the state's ethics laws. And so if the court does decide to review the decision, it should be reviewed with that deferential notion in mind. For those reasons, we ask that you reverse the circuit court judgment. Thank you very much. Thank you. You'll be given five minutes for rebuttal. Thank you, Your Honor. Counselor? Let me please record, Counselor, to represent Eric Gregg, a member of the Prisoner Review Board who was removed from his position by Governor Rauner without cause. I do not agree with the interpretation of counsel that Lunding carved out a small exception to the Wilcox case. The Wilcox case turned on an interpretation of the 1870 Constitution in 1878. The Lunding case concerned the interpretation of the 1970 Constitution decided in 1977. And, two, you don't have to really look much further than the case itself on page 521, where Lunding court and the Supreme Court stated, Thus, the true holding of Wilcox was not that the Governor's removal power was unlimited and unbridled, but that it was incident to and coexistent with his power of appointment. And in determining the extent of the power, it was clear that the courts in both Wilcox and later Ramsey had found the Supreme Court's interpretations of the President's removal power to be analogous and persuasive. So, in light of the 1970 Constitution, the Supreme Court looked at the case law, the United States Supreme Court case law concerning the President's removal power in the trilogy of cases, which has been touched upon by counsel, and found that those are Myers, Humphrey, and Weter. In Myers, it was the discharge of the Postmaster General, a position that is completely within the executive branch. And the Lunding court found that it's unquestioned that the removal power in Myers was proper. It's because the Congress, at any time, could remove any quasi-judgeable authority from a department in the executive and invested it in independent agencies whose members would be insulated from unfettered removal. So, we have exactly that's what's happened here. The Prisoner Review Board was created by the legislature as an independent board. Counsel suggests that because there's an odd number of people on that board, that it can't possibly be nonpartisan. But the act itself requires that it be nonpartisan and that no more than eight of the members come from any party. The fact that it has an uneven number and that, therefore, one party might have a slight majority is not dispositive. And you need look no further than the Supreme Court's discussion in Lunding of the Humphreys case. And in the Humphreys case, it discussed the Federal Trade Commission. And we all know from the trust-busting days of President Wilson that this legislation to have the Federal Trade Commission was set up to help trust-bust monopolies by the legislature. And the legislature, in creating the five-member panel, said that no more than three could be from any party. So we have the same disparity in numbers there, yet that didn't prevent the Lunding Court from determining that the Federal Trade Commission was supposed to be an independent body that exercised its expertise. In the same way, the statutory requirements for members of the Prisoner Review Board require them to have experience in pediology, to have experience that would relate specifically to decisions concerning parole. Now, I think that it's important to realize that Wilcox dealt with the 1870 Constitution, not the 1970 Constitution. And Wilcox was decided before these trilogies of the United States Supreme Court. And why is that important? Why are the United States Supreme Court decisions important in deciding whether or not the governor of Illinois has an unfettered and unlimited right to remove anyone that he supports? Because in both Wilcox and later in Ramsey, which also determined the validity of the governor's removal power, it said that in the 1870 Constitution that the Constitutional Convention was attempting to mirror the president's powers of removal. So, therefore, they look to the U.S. Supreme Court's decisions that outline what that power is. In other words, as Lunding says specifically, the idea was not that the holding of Wilcox was not that the governor's removal power was unlimited and unbridled, but that it was incidental and coincidental with his power of appointment. And determining the extent of the power, it was clear that the courts in both Wilcox and Ramsey had found the U.S. Supreme Court interpretation of the president's removal power to be analogous and persuasive. So that's why the United States Supreme Court decisions are not controlling, but certainly persuasive, because that's what was being attempted to be done by the drafters in the Convention in 1870, and again in 1970 when they talked about Article 12 and the governor's power to remove. And so when we look at this case and the Prisoner Review Board, it is most analogous to which of the trilogies? Obviously, as counsel pointed out, the Federal Trade Commission. And how do we know that? Because that's what Lunding foretold us on page 522. In determining whether the officers of the Federal Trade Commission should fall within the Myers rule, which is the postmaster general the president gets to fire anyone with strictly executive duties, the court noted that the commission is to be non-partisan and that it must, from the very nature of its duties, act with entire impartiality. It is charged with the enforcement of no policy except the policy of law. Its members are called upon to exercise the trained judgment of a body of experts appointed by law and informed by expertise. So where you have, as you do in Humphreys, where the Congress creates the Federal Trade Commission, here we have the Illinois legislature creating the Prisoner Review Board, both the Congress and the Illinois legislature place specifically in the statute that the members of that board that they have created can only be removed by the governor or paused. Where you have that situation and where they perform quasi-judicial functions, the Lunding says, you look at the duties they perform and do they need that independence? Clearly, as Humphreys said, you can't have, and Lunding said with regard to the State Board of Elections, you cannot have people acting independently with the Damocles sword of power over their existence on that board being hung over. So what are quasi-judicial powers and how do we know that the Prisoner Review Board exercises quasi-judicial powers? Well, we don't need to look any further than the mission statement of the Prisoner Review Board, which is set out in their annual report to the governor, in which they characterize themselves as a quasi-judicial entity. And in all respect, they act independently. There is no supervision as suggested by counsel by the governor in any aspect of the duties assigned to the Prisoner Review Board. None. There is a connection between the Prisoner Review Board and the governor. It is small. The last available report from 2014, from the Prisoner Review Board to the governor, shows that there were 45,000 parole hearings and determinations made by the Prisoner Review Board and 541 confidential recommendations made with regard to clemency. Now, look at those confidential recommendations. And I've provided the counsel and I would like to provide the report. I think that supports the Dictation Notice of a decision, the Attorney General's opinion, during Tyrone Federer's time, in which the question was asked whether or not the, in terms of clemency hearings, they could have not public hearings, not public hearings, but rather. I hate to stop you now. Has this been disseminated to the opposing counsel? Yes, it has. Okay. And I want to go on and on because I stated in the brief that in the main, the role of the Prisoner Review Board in determining in clemency is ministerial. And why do I say that? Because the legislature set it up as being the body that would funnel clemency petitions to the governor, provide for public hearings. But also, as this Attorney General opinion states, it's required to have the public hearings, but it can have closed hearings for purposes of deliberation. And the Attorney General states that in terms of clemency petitions, when the Prisoner Review Board meets in the closed section, it is performing a quasi-adjudicative function. In other words, these experts who have been appointed are now giving their opinion on whether or not someone should be granted clemency. So in the same way that they, in parole hearings, use their expertise to see whether or not the grace of parole and conditions of parole should be handed out, in the same way they review decisions to take away good time from prisoners, they are exercising quasi-judicial functions with no control, no right to control, no supervision by the governor. So this is the exact framework that we have at Humphreys with the Federal Trade Commission and makes it a perfect fit with Lundin. I do not believe, and I believe that a fair reading of Lundin does not make it a narrow exception to the Wilcox Rule, which dealt out with the 1870 Constitution. I believe it was a fresh look at the Constitution that had been drafted and put to the people of Illinois in 1970. Let me ask you, what was the major changes from the version of 1870 and 1970 in that rule, in that legislation? In the Constitution, Your Honor, there were actually, the language itself didn't change, except that there was an attempt by, during the 1970 Constitution, to make it clear by a, at that time, Representative Netsch, now the late Dawn Clark Netsch, to put language in the article to say that the governor's power to remove was unfettered and absolute. And that amendment, proposed amendment, was declined because Representative Orlando pointed out that we don't want to have a governor being able to simply stack members on independent boards. And I think that, Justice Barbera said this, it leads to the point, why do you have staggered terms? Why do you have terms of six years for prisoner review? Isn't that a sign that there should be independence? Because it's not co-existent with the governor's terms. In other words, these gentlemen and gentleladies who are put on this board are there to serve the functions defined by the legislatures. They perform no, they exercise no executive power. They simply enforce the law in granting the grace of parole and the conditions thereto. And the fact that they give advisory positions, advisory confidential statements to the governor, which he doesn't have any duty to even look at, let alone follow, do not make them handmaidens of the governor. Well, and the reason I ask my question was simply because you had made several distinctions between the cases that are addressing the 1970 rule as opposed to the 1870 rule, and I wasn't aware of there being much difference in the rule itself, in the wording of the rule. There is not. However, what the Supreme Court said in Lunding is it was the obvious position in Wilcox and later in Ramsey that the Illinois rule would parallel the presidential power of removal. And when you look at the more full description of the United States Supreme Court in determining what the scope of removal was, you find that, as Lunding Court did, when it was put to the people of Illinois that, and the Lunding Court quotes how it was put on the ballot that the governor can remove members that he appoints, positions that he appoints for cause, they say that cannot possibly mean that cause means arbitrary and for any reason. And it simply doesn't. And I just, I don't want to spend much time because I think that in terms of, this is obviously a judicial removal, but I think that the standard I reveal here is an abuse of discretion. We have to look at Judge Lambert's ruling and see if there's been an abuse of discretion. We cannot, there's no authority cited in my counsel for this gift of leniency to the governor to remove the prerequisite of finding cause. He says the governor should be given great deference. Well, given great deference does not eviscerate the language of the statute nor the language of the Constitution as determined by Lunding to show cause for the removal of somebody from the personal review board. Deference does not mean complete, the power to dictate. If there's not any other questions. Well, the, okay, it is an abuse of discretion standard from the governor to make his decision based upon, well, you've got the ethics law, you know, somebody doesn't abide by filing the proper paperwork, bankruptcy issue. Well, that causes ethical issues and we want our state officials to obviously abide by the ethics laws. Well, when I said abuse of discretion, I was, of course, talking about did Judge Lambert abuse his discretion in filing? In terms of the ethics violation, there simply isn't because the statute with regard to filing a statement of interest requires that there be notice given prior to any adverse employment action being taken against the individual who fails to file. The stipulation of facts show that immediately after the time he was appointed, it came to light that there was a gap here that hadn't been filed. No action was taken during the Quinn administration. No action was taken during the Rauner administration to have him go back and file a statement of economic interest in the statute. I mean, there's stipulation of facts, not facts. And the statute requires an absent notice, and it's not just a single notice. It's a notice, a certified notice, and there has to be a refusal, an actual refusal to do it before there can be any action taken. Thank you. Thank you, Your Honors. A few points. Turning to one of Counsel's last points with regard to who gets discretion or whose abuse of discretion are we reviewing, it makes little sense as an intellectual matter to say that the government may remove people but may not do so arbitrarily, and so arbitrariness is the check, but then we don't give deference to that decision. That is not consistent with the recognition in Illinois, consistent recognition in Illinois by Illinois courts, that when courts review a discretionary decision of an official actor, the review is narrowed for arbitrariness. In other words, it's a deferential review. Additionally, it's not consistent with the longstanding Illinois law, going back to the 1853 case that we cite in our brief and I discussed earlier, that the official actor citing that discretion is presumed to do so in good faith and not as an exercise of caprice. With regard to the distinction drawn between the 1870 Constitution and the 1970 Constitution by Counsel, I want to make a few points. First is that Lundy acknowledged Wilcox and did not purport to overrule it at all. There's no suggestion that Lundy changed Wilcox or overruled Wilcox. Second, the framers of the Constitution, the delegates of the Convention, left the language essentially the same. Delegate Young, in the third volume of proceedings at page 1324, in referring to the removal provision, said, this provision, what was ultimately in the 1970 Constitution, this provision as it appears in the 1970 Constitution, all we have done insofar as that section is concerned is to clean up the language and make it a little bit shorter. It is substantively the same. And the delegates recognized in their discussions the Wilcox rule. The 1970 Constitution imports the Wilcox rule. Now, we're not, the argument today, the governor's argument today is not that Lundy is not good law. The Wilcox rule exists as the rule, but Lundy created an exception to the Wilcox rule. Wilcox says these decisions are not reviewable. Lundy says these decisions are reviewable in a narrow set of circumstances. And that narrow set of circumstances draws on the federal cases. And again, those federal cases still draw the dichotomy. Those federal cases do not suggest that all removal decisions are reviewable. Nor do they suggest that if an agency exercises any quasi-judicial functions, they're reviewable. Instead, as counsel explained, Humphrey, his executor, stated that from the very nature of its duties, is independence essential? And are they, is it exercising, is it not exercising any type of policy? And that is not true here with regard to the Prison Review Board. Independence is not necessarily essential from the very nature of its duties, especially because, in part, the Prison Review Board acts as an advisor to the governor on clemency petitions. It's not too different than a cabinet member advising the president, the advice to the governor on these clemency decisions. And that does not require complete independence from the governor. In no way does that require complete independence from the governor. And the same goes for the parole decisions. Those are executive discretion. Those parole decisions implement policy determinations that are not judicially reviewable about when parole may be justified. And that implements policy determinations regarding the nature of the offense, whether somebody is ready to go to society for rehabilitation purposes, whether somebody's been adequately rehabilitated. And those are all executive policy determinations that are implemented through the Prison Review Board. The fact that the Prison Review Board characterizes itself as quasi-judicial in its mission statement on the Internet is not as quasi-judicial. Again, the mere fact that an agency exercises some quasi-judicial functions in some way does not mean that it requires complete independence to perform the essential missions it has, that its function, that the Board's function, will be undermined with the lack of complete independence. And the federal rule, the federal dichotomy, imported into the rule of caution rule by Lummay, understands that distinction. Lummay suggests a narrow exception where the agency at issue requires complete independence, complete disconnect from the executive. The Prison Review Board, in its duties assigned by the General Assembly, including advising the governor on clemency decisions, working with the governor on clemency decisions, and in exercising the executive parole decisions, do not require that complete independence. Thank you very much, Your Honor. Thank you. We'll take a matter under advisement and issue a ruling as soon as possible. Thank you.